UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
TRUSTEES OF THE UNITED PLANT AND
PRODUCTION WORKERS LOCAL 175 BENEFITS
FUND,

                                        Plaintiff,

                -against-

MANA CONSTRUCTION GROUP, LTD., The Estate
of MARK FELDMAN, PATRYCIA FELDMAN,
as executor of the Estate of MARK FELDMAN,
NATALE F. CARDINO, and JOHN DOE COMPANY,

                                Defendants.
------------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 18-4269 (JS) (ARL)

**LINDSAY, Magistrate Judge:**

       Plaintiffs, Trustees of the United Plant and Production Workers Local 175 Benefits Fund (collectively, "Plaintiffs") commenced this action against Mana Construction Group, LTD., the Estate of Mark Feldman, Patrycia Feldman, as executor of the Estate of Mark Feldman, Natale F. Cardino, and John Doe Company for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1145 and § 1132(a), *et seq.* ("ERISA") and the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"). Presently before the Court, on referral from District Judge Seybert, is Plaintiffs' motion for entry of default judgment against Mana Construction Group, Ltd ("Mana" or "Defendant"). Based on the evidence submitted, and for the reasons set forth below, the undersigned respectfully recommends that a default judgment be entered against the defendant Mana on its claim for unpaid contributions and denied with respect to Plaintiffs' claim for withdrawal liability and that Plaintiffs be awarded damages in the amount of $664,267.79, consisting of $353,546.25 in unpaid contributions, $253,551.87 in interest on

the unpaid contributions through January 24, 2022, $35,354.67 in liquidated damages, $14,175.00 in audit fees, $7,640.00 in attorneys' fees and $400 in costs.

## BACKGROUND

The Court presumes familiarity with the facts and procedural history of this case and only includes those facts that are necessary for resolution the instant motion.

### I.     Procedural Background

Plaintiffs filed the complaint in this action on July 27, 2018.  ECF No. 1.  The summons and complaint were served on Defendant on August 28, 2018.  ECF No. 13.  Defendant never answered or otherwise responded to the Complaint.  Plaintiffs filed a request for a certificate of default with the Clerk of Court on October 15, 2019.  ECF No. 14.  The Clerk of Court issued the certificate of default on October 16, 2019.  ECF No. 15.  On March 25, 2020, Plaintiffs filed a motion for a default judgment against Defendant.  ECF No. 22.  The motion was referred to the undersigned on October 23, 2020.  The motion was not served on Defendant, and, therefore, this Court recommended the motion for default judgment be denied.  ECF No. 42.  Judge Seybert adopted the report and recommendation denying Plaintiffs' motion on March 22, 2021.  ECF No. 45.  Plaintiffs filed a second motion for default judgment on May 3, 2021.  ECF No. 49.  Plaintiffs have submitted the Declaration of Vito A. Palmieri ("Palmieri Dec.") along with attached exhibits, and a memorandum of law in support of their motion for a default judgment and damages.  By Order dated May 7, 2021, Judge Seybert referred Plaintiffs' motion to the undersigned.  Defendant has not opposed the motion for default judgment or responded in any way.

### II.    Factual Background

Plaintiffs are trustees and fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A). Compl. ¶ 5. The United Plant and Production Workers Local 175 Benefits Fund is an "employee benefit plan" and "multi-employer plan" within the meaning of 29 U.S.C. §§ 1002(3) and (37). *Id.* The Fund is established and maintained by the Union and various Employers pursuant to the terms of the applicable Collective Bargaining Agreements and Trust Indentures. *Id.* at ¶ 6; Palmieri Dec., Ex. H.

Defendant is a New York corporation engaged in an industry affecting commerce and is an employer within the meaning of 29 U.S.C. § 1002(5). Compl. ¶¶ 9-11. On or about March 2, 2010, Defendant executed a Paving Division Assumption Agreement, agreeing to be bound by the terms and conditions of the Paving Division Collective Bargaining Agreement (the "Paving CBA") between the Local 175 United Plant and Production Workers and the New York Independent Contractors' Alliance Inc. Palmieri Dec. ¶ 9, Ex . F. At the same time, Defendant also executed a Landscaping Division Assumption Agreement, agreeing to be bound by the terms and conditions of the Landscaping Division Collective Bargaining Agreement (the "Landscaping CBA") between the Local 175 United Plant and Production Workers and the New York Independent Contractors' Alliance Inc. *Id.* at ¶ 10, Ex. G. The CBAs required Defendant to submit contribution reports setting forth the hours that each of its employees worked and the amount of contributions due pursuant to the rate schedules set forth in the Paving CBA and Landscaping CBA, for all work performed by its employees covered by the Paving CBA and Landscaping CBA. Compl. ¶ 20. The CBAs also required Defendant to remit such monetary contributions in accordance with the CBAs, and the rules and regulations established in the Trust Indentures. *Id*. In addition, pursuant to the CBAs, Defendant was required to permit and cooperate with the Fund in an audit of the Employer's books and records for the purpose of

3

ascertaining the amount of fringe benefit contributions due the Fund and verifying the accuracy of the Employers' contribution reports. *Id*. at ¶ 23.  Upon the failure to pay contributions as they became due, Defendant was required to pay the following: the additional amount of ten (10%) percent of the total sum of contributions due and unpaid as liquidated damages; ten (10%) percent of the total sum of contributions due and unpaid as interest; audit fees, accountant fees and attorneys' fees at the hourly rate charged to the Fund for such services and all costs incurred in initiating this action for collection of delinquent contributions. *Id*. at ¶ 31.

In the Complaint, Plaintiffs allege that Defendant has "refused to remit certain monthly contributions between January 1, 2010 through December 31, 2012, and January 1, 2013, through December 31, 2015, and each month thereafter through the present date." *Id.* at ¶ 28.  According to Plaintiffs, "[o]n March 24, 2014, and April 2, 2014, Wagner & Zwerman LLP, Plaintiff's accountants, conducted audits of Defendant Mana's books and records for the 2010-2012 years for Defendant Mana's Landscaping Division and Paving Division." Palmieri Dec. ¶ 14, Ex. I, March 24, 2014 and April 2, 2014 audits (the "Original 2010-2012 Audits"). Plaintiffs assert that "[t]he Original 2010-2012 Audits showed deficiencies in Defendant Mana's Landscaping Division contributions in the amount of $231,292.50, as of March 24, 2014, inclusive of interest, liquidated damages, and examination fees ($2,325.00)." *Id.* at ¶ 15, Ex. I, at p. 2.  "The Original 2010-2012 Audits showed deficiencies in Defendant Mana's Paving Division contributions in the amount of $524,266.20, as of April 4, 2014, inclusive of interest, liquidated damages, and examination fees ($2,325.00)." *Id.* at ¶ 16, Ex. I, at p. 32.

Once the audit was completed Plaintiffs sent a demand letter to Mana and Mana made certain payments in accordance with the demand letter. *Id.* at ¶ 17.  "[T]he Original 2010-2012 Audits were revised to reflect the payments made by Mana.  On July 22, 2014, the Paving

4

Division audit and Landscaping Division audit were both revised for the 2010-2012 years (the "Revised 2010-2012 Audits"). *Id.* at ¶ 18, Ex. K. "The Revised 2010-2012 Audits showed reductions in deficiencies in Defendant Mana's Paving Division contributions from $524,266.20, to $107,459.01, as of July 22, 2014, inclusive of interest, liquidated damages, and revision examination fees ($900.00)." *Id.* at ¶ 19, Ex. K, at p. 50. The Revised 2010-2012 Audit shows that for the Paving Division, Mana owes $81,290.25 in unpaid contributions, $17,139.73 in annual interest, liquidated damages of $8,129.03 and revision fees of $900. *Id.*, Ex. K at 50-51. "The Revised 2010-2012 Audits showed reductions in deficiencies in Defendant Mana's Landscaping Division contributions from of $231,292.50, to $41,271.98, as of July 22, 2014." *Id.* at ¶ 20, Ex. K, at p. 2. According to the Revised 2010-2012 Audit, for the Landscaping Division Mana owes $33,445.44 in unpaid contributions, $3,582.00 in annual interest, liquidated damages of $3,344.58 and revision fees of $900. *Id.*, Ex. K at 2. "Accordingly, for the 2010-2012 years, the audits completed as of July 22, 2014, total $153,380.99 in contributions, liquidated damages, interest, and audit fees, with interest accruing from July 22, 2014, to the present date." *Id.* at ¶ 21.

A second audit was conducted for the period 2013 through 2015. *Id.* at ¶ 22. "On or about July 6, 2016, Plaintiff's accountant sent Defendant Mana a demand letter to audit its books and records between January 1, 2013, through December 31, 2015." *Id.* at ¶ 23, Ex. L. The audit was completed on March 6, 2017. *Id.* at ¶ 24, Ex. M . "Pursuant to the 2013-2015 audit of Defendant Mana's Landscaping Division contributions, Defendant Mana owes $108,455.14 in deficient and/or untimely contributions for between 2013 and 2015, inclusive of interest, liquidated damages, and examination fees ($3,862.50) through March 6, 2017." *Id.* at ¶ 25, Ex. M, at p. 2. According to the 2013-2015 Audit for the Landscaping Division, Mana owes $ 85378.40 in unpaid contributions, $10,676.40 in annual interest, liquidated damages of

5

$8,537.84 and audit fees of $3,862.50. *Id.*, Ex. M at 2. "Pursuant to the 2013-2015 audit of Defendant Mana's Paving Division contributions, Defendant Mana owes $191,852.01." *Id.* at ¶ 26. Exhibit M, at p. 10. The 2013-2015 Audit shows that for the Paving Division, Mana owes $153,432.16 in unpaid contributions, $19,214.13 in annual interest, liquidated damages of $15,343.22 and audit fees of $3,862.50. *Id.*, Ex. M, at p. 10. "Accordingly, for the 2013-2015 years, the audits completed as of March 7, 2017, total $300,307.15 owed for untimely and/or unpaid contributions, liquidated damages, interest, and audit fees, with interest accruing from March 7, 2017, to the present date." *Id.* at ¶ 27.

Thus, according to Plaintiffs, pursuant to the two audits, "[i]n total, Defendant Mana owes $453,688.14 for untimely and/or unpaid contributions, plus attorneys' fees, costs, and withdrawal fees. Of the $453,688.14 owed in untimely and/or unpaid contributions: (i) $153,380.99 is accruing interest from July 22, 2014; and (ii) $300,307.15 is accruing interest from March 7, 2017." *Id.* at ¶ 28.

Plaintiffs also allege that "[o]n or about June 30, 2016, Defendants improperly withdrew from the United Plant & Production Workers Local 175 Pension Fund. As a result of the foregoing, pursuant to §§ 4219 and 411(b) of ERISA, Defendants are liable to the Plaintiff for a withdrawal liability of $378,656.00." *Id.* at ¶ 27.

In the Complaint, Plaintiffs assert five causes of action against Mana. In the First Cause of Action Plaintiffs allege they are seeking an order directing "Defendants to allow and cooperate in the conducting of a complete audit . . . and to produce contribution reports, and seeks judgment . . . for fringe benefit contributions in a sum no less than of One Million Sixty-Eight Thousand Six Hundred and Sixty-Four Dollars and Eighty-Two Cents ($1,068,664.82), plus liquidated damages of 10%, contractual interest of 10%, audit fees, withdrawal liabilities of

6

$378,656.00, and attorneys' fees in an amount to be determined." Compl. ¶ 32.  The Second Cause of Action seeks the same relief pursuant to ERISA. *Id.* at ¶ 40.  In the Third Cause of Action Plaintiffs seek a permanent injunction, enjoining Defendant from any future violations, and in the Fourth Cause of Action, seeks a declaratory judgment demanding payment for any future failure to pay contributions. *Id.* at ¶¶ 46, 52.  The Fifth, and final, Cause of Action seeks a declaration that Plaintiffs are entitled to proof of a surety bond. *Id.* at ¶ 57.  In the Palmieri Declaration submitted in support of the motion for default judgment, however, Plaintiffs claim that they have "been damaged in an amount no less than $449,038.14, for untimely and/or delinquent contributions, in accordance with two audits completed for the 2010 to 2012 and 2013 through 2015 years, plus liquidated damages, interest, audit fees, and attorneys' fees, as well as withdrawal liability totaling $378,656.00."[1]  Palmieri Decl. ¶8.

## DISCUSSION

### I. Legal Standard Governing Default Judgments

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments.  First, the Clerk of the Court enters the party's default.  Then, as here, a motion for a default judgment is made to the district court judge.  A default constitutes an admission of all

---

[1] Although in the Complaint, Plaintiffs seek injunctive and declaratory relief they do not purse this relief in the motion for default judgment and therefore these claims are deemed abandoned. *See, Bd. of Trustees of Pointers, Cleaners & Caulkers Annuity Fund, Pension Fund & Welfare Fund v. Harbor Island Contracting, Inc.*, No. 13-CV-6075 MKB, 2015 U.S. Dist. LEXIS 34643, 2015 WL 1245963, at *2 (E.D.N.Y. Mar. 16, 2015) ("The Trustees do not pursue this relief in their motion for default judgment, and thus the Court deems this request abandoned."); *Gesualdi v. Interstate Masonry Corp.,* No. 11 CV 958, 2011 U.S. Dist. LEXIS 151888, 2011 WL 7032900 at *11 (E.D.N.Y. Nov. 16, 2011) ("Although in the Complaint, plaintiffs seek to permanently enjoin defendant. . ., plaintiffs have not demonstrated the necessity of a permanent injunction. Indeed, in submitting their inquest papers, counsel appears to have abandoned the request for injunctive relief."), report & rec. adopted, 2012 U.S. Dist. LEXIS 886, 2012 WL 27441 (E.D.N.Y. Jan. 4, 2012).
.

well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true"). However, even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted).

In addition, in the context of a motion for default judgment, conclusory allegations cannot establish that the defaulting party is liable as a matter of law. *See E.A. Sween Co., Inc. v. A&M Deli Express Inc.*, 787 F. App'x 780, 782 (2d Cir. 2019) (summary order) ("A defaulting party admits only well-pleaded factual allegations; it does not admit conclusory allegations or legal conclusions."). "Conclusory allegations based on information and belief" are generally insufficient to support a finding of default-based liability. *J&J Sports Prods., Inc. v. Daley*, No. 06-CV-0238, 2007 U.S. Dist. LEXIS 49839, 2007 WL 7135707, at *3-4 (E.D.N.Y. Feb. 15, 2007). However, allegations on information and belief may be sufficient to hold a defendant individually liable on a default judgment where such allegations state facts primarily within the defendant's knowledge. *See Joe Hand Promotions, Inc. v. Blais*, No. 11 Civ. 1214, 2013 U.S. Dist. LEXIS 142427, 2013 WL 5447391, at *3 (E.D.N.Y. Sept. 10, 2013) (deeming admitted allegations pled on information and belief in default judgment context) (*citing Fong v. United States,* 300 F.2d 400, 409 (9th Cir. 1962) (finding allegations on information and belief

8

sufficient to hold defendant individually liable on default judgment because they stated facts primarily within defendant's knowledge)); *see also Sexy Hair Concepts, LLC v. Sexy Hair Inc.*, No. 12 Civ. 3937, 2013 U.S. Dist. LEXIS 142361, 2013 WL 5460629, at *4 (E.D.N.Y. Sept. 30, 2013) (deeming admitted allegation on information and belief that defendant owned corporate entity and directed and controlled the activity of the business in default judgment context).

A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). With respect to damages, the movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

## II.  Liability

### A.  Unpaid Contributions

Accepting the allegations in the Complaint as true, Plaintiffs have asserted a valid claim for unpaid contributions under ERISA. ERISA requires employers to pay fringe benefit contributions pursuant to a valid collective bargaining agreement. 29 U.SC. § 1145. Specifically, the statute states that

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Here, Plaintiffs have asserted that Defendant has failed to submit contributions owed pursuant to Revised 2010-2012 Audits and failed to pay contributions due and owing pursuant to the Audit for the years 2013-2015. In support of the motion for default,

9

Plaintiffs rely upon the Declaration of Vito A. Palmieri dated April 29, 2021.  ECF No. 49. Plaintiffs have sufficiently set forth the elements of a claim for liability under ERISA against Defendant.

      **B.**      **Withdrawal Liability**

"Pursuant to 29 U.S.C. § 1381, in the event an employer completely or partially withdraws from a pension plan, the employer is liable to the plan for withdrawal liability 'in order to protect any future benefits that may have vested for employees covered by the plan.'" *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc.,* 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017) (citing *Rao v. Prest Metals*, 149 F. Supp. 2d 1, 5 (E.D.N.Y. 2001)).  "Following withdrawal from a plan, the fund is vested with authority to determine the amount of withdrawal liability. It must then notify the withdrawing employer of its withdrawal liability, set a payment schedule, and formally demand payment." *Burke v. Hamilton Equip. Installers, Inc.*, 02-CV-519, 2006 U.S. Dist. LEXIS 74850, 2006 WL 3831380, at *4 (W.D.N.Y. Oct. 16, 2006) (citing 29 U.S.C. §§ 1382, 1399); *see Daniello v. Planned Sys. Integration*, 07-CV-1729 (RREM) (VVP), 2009 U.S. Dist. LEXIS 132835, at *8 (E.D.N.Y. June 25, 2009), report and recommendation adopted by 2009 U.S. Dist. LEXIS 61387 (July 16, 2009) ("Once an employer has withdrawn from a plan, the sponsor of the plan determines the amount of the withdrawal liability . . . and notifies the withdrawing employer of that amount and provides an amortized payment schedule") (citations omitted).  "The initial notification to the employer must occur 'as soon as practicable after an employer's complete or partial withdrawal.'" *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund,* 270 F. Supp. 3d at 606.

"For a plaintiff to obtain the full amount of withdrawal liability, it must execute the following procedure after an employer withdraws from a multiemployer plan . . . it must notify the employer of the amount of its withdrawal liability, the schedule for making payments, and demand payment in accordance with the schedule." *Durso v. Nunzio & Sons*, No. CV 13-5240 (ADS)(GRB), 2014 U.S. Dist. LEXIS 135890, 2014 WL 4774620 (E.D.N.Y. Aug. 18, 2014), report and recommendation adopted, No. 13-CV-5240 ADS GRB, 2014 U.S. Dist. LEXIS 134744, 2014 WL 4773988 (E.D.N.Y. Sept. 24, 2014) (citing 29 U.S.C. § 1399(b)(1)). Plaintiffs here have failed to allege that demand was made upon Mana for payment of withdrawal liability or that a schedule was set for making payments. Accordingly, the undersigned respectfully recommends that Plaintiffs' motion for default judgment on its claim for withdrawal liability be denied.

### III. Damages

ERISA provides a right of recovery to plaintiffs who have established liability under Section 515 for unpaid contributions, interest, liquidated damages, reasonable attorneys' fees and costs, and such other legal and equitable relief as the court may deem appropriate. 29 U.S.C. § 1132(g)(2). In support of their request for an award of damages, Plaintiffs have submitted the Declaration of Vito Palmieri. ECF No. 49. Attached to the Palmieri Declaration are copies of the applicable Trust Agreement, collective bargaining agreements, and letters sent by the Funds to Defendant, which set forth Defendant's contribution obligations to the Funds and the Funds' various demands for payment. The Court will determine damages based on the documentary evidence.

"Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not." *Labarbera v. Frank*

11

*J. Batchelder Transp. LLC*, No. 08 CV 3387 (SJ)(JMA), 2009 U.S. Dist. LEXIS 7072, 2009 WL 240521, at *3 (E.D.N.Y. Feb. 2, 2009) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "Rather, the court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds v. Midwest REM Enters.*, No. 20-cv-05896 (KAM), 2021 U.S. Dist. LEXIS 125474 (E.D.N.Y. July 6, 2021) (citing *Credit Lyonnais*, 183 F.3d at 155). While the Court need not hold a hearing to determine damages, "[e]ven in the absence of a hearing, . . . the district court cannot simply rely on the plaintiff's statement of damages." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. Jan. 4, 2010) (summary order) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). "Proof of damages must therefore be based on admissible, authenticated evidence." *Bd. of Trs. of the United Union of Roofers v. Dana Restoration, Inc.,* No. 09-cv-1076 (RRM)(ALC), 2010 U.S. Dist. LEXIS 103211, 2010 WL 3925115, at *2 (E.D.N.Y. Sept. 14, 2010).

  A. **Unpaid Contributions**

ERISA section 502(g)(2)(A), 29 U.S.C. § 1132(g)(2)(A), provides for an award of unpaid contributions by Defendant. The CBAs do as well. In the Complaint, Plaintiffs seek unpaid contributions of $1,068,664.82. Compl. ¶ 32. In the Palmieri Declaration submitted in support of the motion for default judgment, Plaintiffs request unpaid contributions in a different amount. The Revised 2010-2012 Audit shows that for the Paving Division, Mana owes $81,290.25 in unpaid contributions, Palmieri Dec., Ex. K at 50-51, and for the Landscaping Division Mana owes $33,445.44 in unpaid contributions. *Id*., Ex. K at 2. According to the 2013-2015 Audit for the Landscaping Division, Mana owes $85,378.40 in unpaid contributions,

12

*id*., Ex. M at 2, and for the Paving Division, Mana owes $153,432.16 in unpaid contributions. *Id*., Ex. M, at p. 10. Thus, total unpaid contributions sought by Plaintiffs in the default motion total $353,546.25. Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded $353,546.25 in unpaid contributions.

### B. Interest on Unpaid Contributions

ERISA Section 502(g)(2)(B), 29 U.S.C. § 1132(g)(2)(B), mandates an award of interest on unpaid contributions. The statute provides that "interest on unpaid contributions shall be determined by using the rate provided for under the plan, or, if none, the rate prescribed under section 6621 of Title 26 [the Internal Revenue Code of 1986.]" 29 U.S.C. § 1132(g)(2). Pursuant to the CBAs, in the event that Mana failed to make timely monthly contributions, they would be required to pay annual interest on the untimely payments in the amount of 10%. Palmieri Dec. ¶12, Ex. H, at Article XI, Section 5.

Plaintiffs seek interest on the unpaid contributions. The Revised 2010-2012 Audit shows that for the Paving Division, $17,139.73 in annual interest is owed through July 22, 2014. *Id*., Ex. K at 50-51. In addition, pursuant to the Revised 2010-2012 Audit, for the Landscaping Division Mana owes $3,582.00 in annual interest through the same date. *Id*., Ex. K at 2. The Auditors also concluded that in accordance with the 2013-2015 Audit Report for the Landscaping Division, Mana owes $10,676.40 in annual interest through March 7, 2017. *Id*., Ex. M at 2. The 2013-2015 Audit Report also shows that for the Paving Division, Mana owes $19,214.13 in annual interest. *Id*., Ex. M, at p. 10. Thus, Plaintiffs have submitted proof of the interest owed for the amount of $50,612.26.

Plaintiff is also seeking interest on the unpaid contributions through the date of judgment. According to Plaintiffs, "[i]n total, Defendant Mana owes $453,688.14 for untimely

13

and/or unpaid contributions, plus attorneys' fees, costs, and withdrawal fees. Of the $453,688.14 owed in untimely and/or unpaid contributions: (i) $153,380.99 is accruing interest from July 22, 2014; and (ii) $300,307.15 is accruing interest from March 7, 2017." Palmieri Dec. at ¶ 28. However, total unpaid contributions identified in the Revised 2010-2012 Audit do not total $153,380.99. Rather unpaid contributions for the Landscaping Division and the Paving Division total $114,735.29. The difference is made up by liquidated damages, interest and audit fees noted in the Revised 2010-2012 Audit, and pursuant to the CBAs Plaintiffs are only entitled to interest on the unpaid contributions. Palmieri Dec. ¶12, Ex. H, at Article XI, Section 5. The same is true for the 2013-2105 audit, unpaid contributions total $238,810.56 rather than $300,307.15. Thus, for the unpaid contributions identified by the Revised 2010-2012 Audit Plaintiffs are entitled to an additional $86,212.49 in interest and for the unpaid contributions identified in the 2103-2105 Audit Plaintiffs are entitled to $116,727.12 in interest through January 24, 2022. These numbers were calculated by utilizing a method previously espoused in this District: taking the number of days for which interest is due and multiplying it by the daily interest rate (the amount of delinquent contributions x 0.18 (yearly interest) /365 days). *See, e.g., Gesualdi v. Reliance Trucking of CG Inc.*, No. 14-cv-4112, 2015 U.S. Dist. LEXIS 47070, 2015 WL 1611313, at *11 (E.D.N.Y. Apr. 10, 2015). In addition, because the principal amount remains outstanding, daily interest at that rate should continue to accrue for each day until judgment is entered. *Id*. Accordingly, the undersigned recommends that Plaintiffs be awarded interest in the amount of $253,551.87 as of January 24, 2022.

    **C.**    **Liquidated Damages**

29 U.S.C. § 1132(g)(2)(C) allows for liquidated damages in an amount equal to the greater of interest on the unpaid contributions or 20% of the unpaid amounts due. Here, the

14

CBAs provide that liquated damages shall be 10% of the unpaid contributions. Palmieri Dec. ¶12, Ex. H, at Article XI, Section 5.

The Revised Audit Report shows that for the Paving Division, Mana owes liquidated damages of $8,129.03, *id*., Ex. K at 50-51, and for the Landscaping Division, Mana owes liquidated damages of $3,344.58. *Id*., Ex. K at 2. According to the 2013-2015 Audit Report for the Landscaping Division, Mana owes liquidated damages of $8,537.84, *id*., Ex. M at 2, and for the Paving Division, Mana owes liquidated damages of $15,343.22. Accordingly, the undersigned recommends that liquidated damages be awarded in the amount of $35,354.67.

    **D.**    **Audit Fees**

As noted above, the Funds' auditors conducted an audit of Mana's books and records for 2010-2012 and 2013-2015. Audit fees are available under Section 1132(g)(2)(E) of ERISA, which provides for "such other legal or equitable relief as the court deems appropriate." *See Martone v. HST Roofing, Inc.,* No. 03 CV 4165, 2007 U.S. Dist. LEXIS 12548, 2007 WL 595054, at *4 (E.D.N.Y. Feb. 22, 2007) (awarding audit fees). Plaintiff seeks to recover audit fees for the Original Audit, the Revised 2010-2012 Audit and the 2013-2015 Audit. Audit fees incurred for the Original Audit of the Landscaping Division and the Paving Division amounted to $2,325.00 for each division. Palmieri Dec. at ¶¶ 15, 16, Ex. I. The Revised 2010-2012 Audit shows that Mana owes revision fees of $900 for each both the Paving Division and the Landscaping Division. *Id*., Ex. K at 2, 50-51. Finally, according to the 2013-2015 Audit Mana owes audit fees of $3,862.50 for each of the Paving Division and the Landscaping Division. *Id*., Ex. M at 2, 10. Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded $14,175.00 in audit fees.

    **F.**    **Attorneys' Fees and Costs**

Section 502(g)(2) of ERISA mandates awarding reasonable attorneys' fees and costs in ERISA matters brought by fiduciaries to enforce the terms of the CBA. 29 U.S.C. § 1132(g)(2)(D). As a general matter, in determining appropriate attorneys' fees, the "starting point" for calculating a "'presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee'.") (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). The Supreme Court held that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. Ex rel. Winn.,* 559 U.S. 542, 551 (2010) (emphasis in original). "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee." *Id.* at 553 (citation omitted); *see Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 184, 190-91 (holding a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 190. The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984),

16

and the relevant community is generally the "district in which the court sits," *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney, *see Scott v. City of New York,* 643 F.3d 56, 57 (2d Cir. 2011). Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." *Perdue,* 559 U.S. at 552.

In the present case, Plaintiffs retained the services of Palmieri, Castiglione & Associates, P.C. ("PCA"). PCA billed the Funds for legal services totaling $7,640.00 for the period January 1, 2018 through March 23, 2020. To support Plaintiffs' request for attorneys' fees and costs, Plaintiffs submitted the Declaration of Vito Palmieri of PCA, with contemporaneous billing records annexed to the affirmation. *See* ECF No. 49, Ex. O. The itemization reflects that two attorneys worked on this case. It is Plaintiff's burden, as the party seeking fees, to "offer evidence to the Court in addition to the attorney's own affidavits why its requested fee is appropriate." *LV v. N.Y. City Dep't of Educ.*, 700 F. Supp. 2d 510, 521 (S.D.N.Y. 2010); *see Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 305 (E.D.N.Y. 2015) ("biographical information concerning the attorneys for whom charges were submitted [ ] is required to evaluate experience levels"). "Where, as here, the moving party fails to provide any biographical information to support the reasonableness of the rates, the court may use its discretion to award fees at a lower rate than requested." *Pilitz v. Inc. Vill. of Freeport*, No. CV 07-4078, 2011 U.S. Dist. LEXIS 132666, 2011 WL 5825138, at *5 (E.D.N.Y. Nov. 17, 2011).

17

An internet search reveals that Vito Palmieri has been an attorney since 1989 and Michael Impellizeri, a former associate of the firm, has been an attorney since 2015.

The Court finds that Plaintiffs' submission provides sufficient evidence to form the basis for an award of damages without a further hearing.  Plaintiffs seek reimbursement for legal services rendered by Vito Palmieri, a name partner of the firm, at the rate of $150 per hour, and Michael Impellizeri, an associate at the rate of $200-150 per hour.  ECF No. 49, Ex. O.  The Court finds these rates to be consistent with the rates awarded in this district in ERISA cases. Courts in this district typically award hourly rates ranging from $300 to $450 per hour for partners in cases such as this.  *See Gesualdi v. Burtis Constr. Co.,* No. CV 20-4864 (ARR) (ARL), 2021 U.S. Dist. LEXIS 246876 (E.D.N.Y. Dec. 28, 2021) (reducing rates of Christopher Smith and Michelle Salerno to $400 and $100, respectively); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers , Loc. 15, 15A, 15C & 15D, AFL-CIO v. Genrus Corp.*, No. 20 CV4980 MKB RER, 2021 WL 4755704, at *5 (E.D.N.Y. Aug. 16, 2021), report and recommendation adopted sub nom*., Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Genrus Corp.*, No. 20 CV 4980 MKB RER, 2021 WL 3928952 (E.D.N.Y. Sept. 2, 2021).  Similarly, courts in this district generally award hourly rates of $200-$300 per hour for senior associates and $100-$200 per hour for junior associates. *See Loc. 1922 Pension Fund v. Broadway Elec. Supply, Co*., No. CV 19 2344 JS AKT, 2020 WL 1931635, at *13 (E.D.N.Y. Mar. 18, 2020). In fact, in order to account for the relative simplicity of ERISA default cases, courts in this district often approve rates that are closer to the lower end of this range. *See Gesualdi v. Seacoast Petroleum Prod., Inc.*, 97 F. Supp. 3d 87, 104 (E.D.N.Y. 2015) (citations omitted).

Having determined the reasonable hourly rates to be used in this case, the Court now turns to the reasonableness of the hours billed. "The number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary." *Finkel v. Metro Sign & Maint. Corp.*, No. 09 CV 4416, 2010 WL 3940448, at *16 (E.D.N.Y. Aug. 12, 2010) (citing *Labrera v. Frank J. Batchelder Transp. LLC*, No. 08–CV–3387, 2009 WL 245021, at *4 (E.D.N.Y. Feb. 2, 2009)). Here, the record reflects that the attorneys and paralegals spent a total of 37.5 hours on this matter. Palmieri Dec., Ex. O. The time records submitted here describe what tasks were performed on behalf of Plaintiffs, the dates on which such tasks were performed, and the amount of time expended. Based on the foregoing, it is recommended that Plaintiffs be awarded $7,640.00 in fees.

Plaintiffs also seek costs. *See Trs. of Local 7 Tile Industry Welfare Fund v. Amarko Marble & Granite Co.*, No. 13-CV-2779, 2014 WL 1622098, at *11 (E.D.N.Y. Apr. 22, 2014) ("Generally, reasonable costs may be recovered by the prevailing party in an ERISA action."). Plaintiffs have not provided a description of the expenses nor have they furnished a receipt or other relevant documentation reflecting the costs. *See Nationstar Mortg. LLC v. Fernandez*, No. 17-cv-404 (DRH)(SIL), 2017 U.S. Dist. LEXIS 193710, 2017 WL 6767239, at *6 (E.D.N.Y. Nov. 21, 2017) (citing *Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-cv-3027, 2015 U.S. Dist. LEXIS 43926, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015)), adopted by, 2018 U.S. Dist. LEXIS 351, 2018 WL 262837 (E.D.N.Y. Jan. 2, 2018). Thus, costs cannot be awarded. However, the court take judicial notice that Plaintiff incurred the $400 filing fee when commencing this action. *See Trustees of United Plant & Prod. Workers Loc. 175 Benefits Fund v. Carlo Lizza & Sons Paving, Inc.,* No. 16-CV-5521 (DRH) (GRB), 2019 U.S. Dist. LEXIS 148761, 2019 WL 5699992 (E.D.N.Y. Aug. 29, 2019), report and recommendation adopted, No.

16-CV-5521 (DRH) (GRB), 2019 U.S. Dist. LEXIS 170311, 2019 WL 4805044 (E.D.N.Y. Oct. 1, 2019) (citing *Alland v. Consumers Credit Corp.,* 476 F.2d 951 (2d Cir. 1973) ("costs" generally include such expenses as filing fees)).  Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded costs in the amount of $400.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below.  Counsel for Plaintiffs shall serve a copy of this Report and Recommendation on the Defendant upon receipt and shall file proof of service with the Court.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service.  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
        January 24, 2022

                                        _____/s/_____
                                        ARLENE R. LINDSAY
                                        United States Magistrate Judge